## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

CHRISTOPHER WELLS,

       Movant,

   v.

UNITED STATES OF AMERICA,

       Respondent.

CIVIL ACTION NO.: 5:21-cv-51

(Case No.: 5:17-cr-12)

## ORDER AND REPORT AND RECOMMENDATION

Movant Christopher Wells ("Wells"), who is currently housed at the United States Penitentiary-Hazelton in Bruceton Mills, West Virginia, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence, as supplemented. Docs. 1, 3, 6. The Government filed a Motion to Dismiss; Wells filed a Response. Docs. 15, 28. Wells filed Motions to Receive Copy of Evidence and for Documents, docs. 22, 23, and the Government responded. Docs. 24, 25. Wells also filed a Motion for Status and a Motion for First Step Act Credits. Docs. 30, 31. In addition, Wells filed a Motion to Reveal and Place on Record, Motion for Evidentiary Hearing, and Motion to Have a Rule 48 Master. Docs. 33, 34, 34. The Government responded to these three Motions, doc. 36, and Wells filed a Reply, doc. 38. Finally, Wells filed two Motions to Appoint Counsel. Docs. 39, 43.

For the reasons which follow, I **RECOMMEND** the Court **DENY** Wells's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Wells *in forma pauperis* status on appeal and a Certificate of Appealability. I **DENY as moot** Wells's Motions for First Step Act Credits and for Status and

**DENY** all other remaining Motions.  In addition, Wells filed a Motion to Compel in his criminal case, which I also **DENY**.  United States v. Wells, Case No. 5:17-cr-12 (S.D. Ga. June 21, 2021), ECF No. 1040.

## BACKGROUND

Wells was charged in a multi-defendant indictment with: conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846 (count 1); and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841 (counts 19 and 20).  United States v. Wells, Case No. 5:17-cr-12 (S.D. Ga. Aug. 2, 2017), ("Crim. Case"), ECF No. 3.  Wells faced a penalty of at least 10 years and up to life in prison on the conspiracy count and a penalty of at least 5 years up to 40 years in prison on the possession counts.  Crim. Case, ECF Nos. 4, 146.  The Court appointed Stephanie McDonald to represent Wells.  Crim. Case, ECF No. 33.  Ms. McDonald filed numerous pretrial motions on Wells's behalf.  Crim. Case, ECF Nos. 73–77, 79–85.

Wells was then charged in a multi-defendant superseding indictment with conspiracy (count 1), three counts of possession with intent to distribute (counts 19, 20, and 44), one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (count 45), and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) (count 46).  Crim. Case, ECF No. 145.  In addition to the original penalties, Wells also faced a term of up to 10 years and at least 5 years up to life in prison on the firearms counts, respectively.  Crim. Case, ECF No. 146.  The Government filed a 21 U.S.C. § 851 notice of enhanced punishment based on Wells's previous felony drug conviction under the Georgia Controlled Substances Act.  Crim. Case, ECF No. 183.  Ms. McDonald filed several more pretrial motions on Wells's behalf.  Crim. Case, ECF Nos. 318, 319, 323–25, 379.  The

Government filed a notice of plea agreement with Wells, and the Court dismissed as moot all motions.  Crim. Case, ECF Nos. 416, 417.

Ms. McDonald then filed a motion to withdraw as counsel, noting she and Wells could not agree on how to proceed with the defense, and also a motion to withdraw Wells's guilty plea and request for hearing on the guilty plea withdrawal.  Crim. Case, ECF Nos. 455, 456.  Wells then decided to have Ms. McDonald withdraw these motions.  Crim. Case, ECF No. 466, 469.  The Court held a hearing, during which Wells was placed under oath and assured the Court he no longer wanted Ms. McDonald to withdraw as counsel and wanted to plead guilty.  Crim. Case, ECF No. 477.  The Court granted Wells's motion to withdraw the motions asking for new counsel and dismissed as moot Wells's requests to withdraw his guilty plea and for a hearing.  Crim. Case, ECF Nos. 477, 484.

Ms. McDonald then filed a second motion to withdraw as counsel based on a letter Wells sent to the Court because Wells seemed to ask for another attorney and because Wells was asking Ms. McDonald to pursue a course requiring Ms. McDonald to withdraw in order to comply with the rules of professional conduct.  Crim. Case, ECF No. 482.  After a hearing, the Court granted Ms. McDonald's motion to withdraw and announced it would appoint new counsel for Wells.  Crim. Case, ECF Nos. 491, 496.

The Court then appointed Dennis O'Brien, Jr., to represent Wells.  Crim. Case, ECF Nos. 495, 496.  Mr. O'Brien soon thereafter moved to withdraw as counsel at Wells's behest.  Crim. Case, ECF No. 524.  After a hearing on the matter, the Court dismissed Mr. O'Brien's motion.  Crim. Case, ECF Nos. 526, 527.  Wells then filed a pro se motion for a <u>Faretta</u> hearing, ostensibly asking to proceed without counsel.  Crim. Case, ECF No. 562.  The Court held another hearing, during which Mr. O'Brien orally moved to withdraw as counsel.  Crim. Case,

ECF No. 570.  Wells announced he no longer wished to represent himself and asked the Court to appoint new counsel.  The Court granted Mr. O'Brien's motion and then appointed Amy Lee Copeland to represent Wells.  Crim. Case, ECF No. 585.

Ms. Copeland filed a motion to restate and resurrect the pretrial motions Wells's previous attorneys filed, which the Court granted.  Crim. Case, ECF Nos. 616, 635.  So, too, did Ms. Copeland file a motion to withdraw as counsel based on statements Wells made to her in person and in a letter.  Crim. Case, ECF No. 659.  The Court conducted a hearing on this motion and granted the motion.  Crim. Case, ECF Nos. 677, 679.  The Court then appointed Daveniya Fisher to represent Wells.  Crim. Case, ECF No. 678.

Wells filed a pro se motion to appoint another attorney and claimed Ms. Fisher and he did not have the same interests and could not agree on anything.[1]  Crim. Case, ECF No. 813.  The Court conducted an attorney inquiry hearing, during which Wells withdrew his request for substitution of counsel; the Court denied Wells's motion as moot.  Crim. Case, ECF Nos. 819, 820.  Wells then filed an ex parte motion asking the Court to terminate Ms. Fisher's appointment.  The Court denied this motion after conducting another hearing.  Crim. Case, ECF Nos. 830, 836, 837.  Based on Ms. Fisher's representation to the Court, the Court denied as moot all outstanding pretrial motions.  Crim. Case, ECF No. 848.

After the Court set this case for jury selection and trial, Wells filed another ex parte motion for Ms. Fisher to be removed as his attorney, Crim. Case, ECF Nos. 869, 870, and the Court once again conducted a hearing.  The Court then denied the motion, finding neither Wells

---

[1]    Around this time, Ms. Fisher filed a motion for psychiatric examination, and, after a hearing, the Court granted the motion.  Crim. Case, ECF Nos. 752–54.  Wells was evaluated by a psychologist with the Bureau of Prisons, who opined Wells was competent to stand trial.  The parties stipulated to Wells's competency to stand trial.  Crim. Case, ECF Nos. 839, 845.  Ultimately, Wells was deemed competent to stand trial.  Crim. Case, ECF No. 845.

nor Ms. Fisher showed "an irreconcilable conflict or a complete breakdown in communications."[2]  Crim. Case, ECF No. 874, p. 1; see also Crim. Case, ECF No. 872.

Soon thereafter, the Government notified the Court it had reached a plea agreement with Wells, whereby Wells agreed to plead guilty to counts 1 and 45 of the superseding indictment. Crim. Case, ECF Nos. 875, 881.  The plea agreement contained two waivers: a waiver of Wells's right to file a direct appeal, except if the Court sentenced him above the statutory maximum, the Court sentenced him above the Sentencing Guidelines found by the Court, or if the Government appealed Wells's sentence; and a waiver of his means to collaterally attack his convictions or sentence, other than based on a claim of ineffective assistance of counsel.  Crim. Case, ECF No. 881, pp. 8–9.  The Honorable Lisa Godbey Wood conducted a change of plea, or Rule 11, hearing and accepted Wells's plea.  Crim. Case, ECF No. 918.

At the outset of the Rule 11 hearing, Judge Wood stated it was her understanding from the Government and Ms. Fisher that Wells wanted to change his plea to guilty on "two counts" in a "multi-count federal felony criminal superseding indictment[.]"  Id. at 2.  Wells confirmed Judge Wood's understanding.  Judge Wood informed Wells the purpose of the hearing was to ensure he understood the case pending against him and all of the rights he would waive if the Court accepted his plea, there was a factual basis for the finding of guilt on the charges to which he was pleading guilty, and pleading guilty was what Wells wanted to do.  Id. at 2–3.  Wells affirmed no one was making him, pushing him, or leaning on him to change his plea.  Id. at 3. During the plea hearing, Assistant United States Attorney ("AUSA") Jennifer Kirkland established the factual basis for Wells's plea agreement by calling Task Force Officer Michael Sapp ("TFO Sapp") to testify.  Id. at 24–27.  Wells stated he did not disagree with anything TFO

---

[2]     Wells filed a second motion/letter seeking Ms. Fisher's removal, which was dated before the hearing but was not received and filed until after the hearing.  Crim. Case, ECF Nos. 877, 878.

Sapp presented and admitted to the truth of his testimony, including the fact officers had a search warrant for Wells's residence. Id. at 28. Judge Wood accepted Wells's guilty plea, adjudged him guilty of counts 1 and 45 of the superseding indictment, and directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR"). Id.

After the plea hearing and before the sentencing hearing, Wells filed yet another letter/motion for Ms. Fisher to be replaced as counsel. Crim. Case, ECF No. 901. The Court conducted another attorney inquiry hearing and then denied Wells's motion. Crim. Case, ECF Nos. 903, 904. Wells then filed a motion to proceed pro se and for Ms. Fisher's removal, and the Court conducted a hearing on this motion. The Court denied the motion. Crim. Case, ECF Nos. 912, 923, 924. Wells filed another motion for withdrawal of counsel, and the Court conducted a hearing and denied Wells's motion. Crim. Case, ECF Nos. 940, 967, 968, 980.

At the sentencing hearing, Judge Wood reminded Wells he and Ms. Fisher appeared before her for the Rule 11 hearing where he pleaded guilty to and was adjudged guilty of count 1 of the superseding indictment, conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine, and to count 45 of the superseding indictment, possession of a firearm by a convicted felon. Crim. Case, ECF No. 988, p. 4. Wells stated he had no objections to the facts and conclusions regarding the Guidelines application the probation officer made, and Judge Wood adopted those findings as her own. Id. at 5. Judge Wood inquired whether Wells wished to withdraw his guilty plea, as there "have been some indication[s]" he wished to do so, but Wells verified (twice) he no longer wished to withdraw his plea. Id. Judge Wood determined Wells's total offense level was 33, with a criminal history category of six, which resulted in a 235- to 239-month Guidelines' range, and she noted the statutory penalty for count 1 was a minimum of 10 years and a maximum of life in prison and a maximum of 10 years

in prison for count 45.  Id. at 6.  After Ms. Fisher informed the Court the facility where Wells

was housed would not allow her to visit Wells during the COVID-19 pandemic prior to

sentencing, Judge Wood recessed Court for approximately four hours to allow counsel to confer

with Wells and to review the PSR and various pieces of evidence again.  Id. at 7–8, 10–11.

Before the Court recessed, the Government notified the Court it was withdrawing its § 851 notice

per the terms of the plea agreement.  Id. at 9–10.

   After the four-hour recess, Ms. Fisher asked Judge Wood for a downward departure from

the Guidelines' range by two levels based on Wells's admissions of being a gang member and to

selling drugs and based on the amount of drugs that were recovered, which would result in a

range of 188 to 235 months' imprisonment.  Id. at 12–13.  After AUSA Kirkland summarized

why the Government felt Judge Wood should not downwardly depart due to Wells's history of

violence and the amount of drugs he sold in a short time, Judge Wood allowed Wells to address

the Court.  Id. at 18.  Wells explained he needed the extra time provided by the four-hour recess

to discuss the case with Ms. Fisher and to understand the sentencing process.  Id.  Wells

expressly accepted responsibility for his actions.  Id.  He admitted to being "in gangs since [he

was] little."  Id. at 20.  Judge Wood sentenced Wells to 210 months' imprisonment, which she

noted is a sentence below the advisory Guidelines' range but was made based on the 18 U.S.C.

§ 3553 factors, the nature of the offense, and Wells's history.  Id. at 22; Crim. Case, ECF Nos.

931, 934.

   Wells filed a notice of appeal to the Eleventh Circuit Court of Appeals after this Court

entered judgment.  Crim. Case, ECF No. 1018.  The Eleventh Circuit granted the Government's

motion to dismiss the appeal as untimely and dismissed Wells's appeal.  Crim. Case, ECF Nos.

1058, 1059.

Wells has now filed this § 2255 Motion challenging his conviction and sentence, arguing Ms. Fisher rendered ineffective assistance of counsel.  Docs. 1, 3, 6.  The Government filed a Motion to Dismiss, to which Wells responded.  Docs. 15, 28.  This matter is fully briefed and ripe for the Court's review.

## DISCUSSION

### I.   The Court Should Deny Wells's Ineffective Assistance Claims

A movant bears the burden of showing entitlement to relief under § 2255.  Beeman v. United States, 871 F.3d 1215, 1222 (11th Cir. 2017).  A movant is not entitled to relief if his claims "are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warrant summary dismissal." Adams v. United States, No. 19-11068-C, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019) (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted)).

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001), and on appeal, Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption

counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong."  Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance."  Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.  "The cases in which habeas petitioners can

properly prevail on the ground of ineffective assistance of counsel are few and far between."

James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92.  In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different."  Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Strickland, 466 U .S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).

## A.    Assistance During Pre-Plea Proceedings

Wells makes several allegations concerning Ms. Fisher's assistance at all stages of his criminal proceedings, including during the pre-plea agreement proceedings.  Wells claims Ms. Fisher failed to file any pretrial motions on his behalf, including a motion to suppress, even though she knew the GBNET (Glynn-Brunswick Narcotics Enforcement Team) had been disbanded, members of the GBNET were indicted, at least one member of this group lied to the grand jury, and officers conducted a warrantless search and seizure of his residence.  Doc. 1 at 4, 5, 7; Doc. 3-1 at 3–4; Doc. 3-2 at 3–4, 6.  In addition, Wells states Ms. Fisher conducted no meaningful investigation into this case.  Doc. 1.  Wells maintains Ms. Fisher failed to argue this Court lacked jurisdiction over the state offense of possession of 50 grams or more of controlled

substances.  Id. at 8.  Further, Wells states Ms. Fisher knew he had brought a civil rights lawsuit against an AUSA and failed to say anything about this "conflict of interest[.]"  Doc. 3-1 at 3; Doc. 3-2 at 3.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563, 569 (1989) (finding the determination a defendant could not raise double jeopardy claim on collateral attack following his guilty plea was constitutional).  Pertinently, a "knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea."  Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992).

Wells's contention Ms. Fisher provided ineffective assistance of counsel during pre-plea proceedings is precluded because Wells entered a knowing and voluntary guilty plea.[3]  For instance, any claim by Wells that Ms. Fisher failed to file a motion to suppress would be precluded, because such conduct would not affect the voluntariness of Wells's plea.  See, e.g., Menchaca v. Davis, Civil No. SA-18-CA-01272, 2019 WL 4702633, at *4 (W.D. Tex. Sept. 25, 2019) (noting allegation of ineffective assistance of counsel for failure to file a motion to suppress before plea agreement reached did not relate in any way to voluntariness of plea).  In

---

[3]      Wells does not argue his plea was not entered into knowingly and voluntarily.  Even if he did make that argument, it would fail.  After an extensive colloquy with Wells, Judge Wood expressly found Wells's offer to plead guilty to counts 1 and 45 of the superseding indictment was "knowing[]" and "voluntary."  Crim. Case, ECF No. 918.  Nothing in the record contradicts that finding.  Thus, Wells's entry of a guilty plea bars any ineffective assistance claim relating to Ms. Fisher's assistance during the pre-plea stage.

addition, Wells fails to acknowledge his earlier appointed counsel did file a motion to suppress—and numerous other pre-plea motions—on his behalf, even if Ms. Fisher did not do so.  Crim. Case, ECF Nos. 73–77, 79–85, 318–19, 232–25, 379, 616, 635.  The Court dismissed these motions once Wells entered into his voluntary and knowing plea.  Crim. Case, ECF Nos. 416, 417, 848.  Wells fails to show any of Ms. Fisher's pre-plea action or inaction could be called into question or would in any way support an assertion Wells's plea was not knowing and voluntary.  Thus, the Court should **DENY** this portion of Wells's § 2255 Motion.

### B.  Assistance During Plea Negotiations and Proceedings

Wells makes essentially three arguments concerning Ms. Fisher's assistance during plea negotiations and proceedings.  First, Wells maintains Ms. Fisher pressured him to enter into a plea agreement, even though she knew he had filed a civil lawsuit against AUSAs involved in the criminal case.[4]  Doc. 1 at 7.  Second, Wells states he only agreed to plead guilty to the conspiracy count of the original indictment, yet Ms. Fisher convinced him to plead guilty to an 18 U.S.C. § 924(a) charge that was not contained in the superseding indictment (count 45).  Doc. 3-1 at 5; Doc. 6-1 at 5.  Third, Wells contends Ms. Fisher did not review the plea agreement with him, did not inform Wells of the waiver provisions in the plea agreement, told him he would be sentenced based on the draft of the PSR, and did not provide Wells with a sufficient opportunity to review the final PSR prior to sentencing.  Doc. 3-1 at 3; Doc. 3-2 at 2; Doc. 6-1 at 3.  In addition, Wells states he was not aware "of a reasonable plea offer until well after his case was concluded."  Doc. 3-1 at 5.

---

[4]     The Court presumes Wells is referencing the civil rights complaint he filed in this Court in <u>Wells v. Mateo</u>, 2:18-cv-109 (S.D. Ga. Sept. 17, 2018), in which it appears he objected to the search warrant's execution and his subsequent arrest and detention.  ECF No. 1.  The Court found Plaintiff's claims to be incoherent and dismissed his cause of action after Plaintiff failed to comply with the Court's Order to amend his complaint.  <u>Wells v. Mateo</u>, 2:18-cv-109, ECF Nos. 19, 22, 23, 36.

The Government states the record belies Wells's claims.  First, the Government asserts Wells stated under oath he had reviewed and discussed the plea agreement with Ms. Fisher, Wells confirmed the accuracy of the AUSA's summary of the plea agreement, and he entered into the agreement knowingly and voluntarily.  Doc. 15 at 13.  Second, the Government states Wells's claims regarding the counts to which he was pleading guilty are factually incorrect. Specifically, the Government notes the conspiracy—as charged in the superseding indictment— involved 50 grams or more of methamphetamine; Wells was charged in count 45 of the superseding indictment of possessing firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2);[5] and Wells pleaded guilty to illegal possession of a firearm, not ammunition.  Id. at 14.  Third, the Government notes, even if Ms. Fisher had not discussed the waiver provisions of the plea agreement with Wells, the Court did so and Wells stated he understood and had no questions.  The Government asserts Wells fails to allege there is a reasonable probability he would have accepted any other alleged plea offer and he would have received a more favorable outcome due to this alleged plea offer.  Id. at 15–16.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563, 569 (1989) (finding the determination a defendant could not raise double jeopardy claim on

---

[5]     The Government also states, had the superseding indictment not contained an 18 U.S.C. § 924(a)(2) mention, that omission would have been harmless, as § 924(a)(2) merely sets forth the penalties applicable to 18 U.S.C. § 922(g)(1) violations.  Doc. 15 at 14; Crim. Case, ECF No. 145, pp. 25–26 (charging Wells with being a prohibited person in possession of a firearm, in violation of §§ 922(g)(1) and 924(a)(2)).

collateral attack following entry of guilty plea was constitutional); see also Carstarphen v. United States, Civ. Action No. 07-0417, 2008 WL 4369010, at *2–3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct based on valid collateral attack waiver)).

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)).

In addition, a defendant must live with what he has told a court under oath.  A defendant's sworn testimony to the trial judge in open court is presumed to be truthful.  In the context of a plea hearing, the United States Supreme Court has stated: "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  Id.

Wells, with the assistance of Ms. Fisher, and the Government were able to reach an agreement whereby Wells agreed to plead guilty to Counts 1 and 45 of the superseding indictment.  Crim. Case, ECF No. 881, pp. 1–2.  Relevantly, in the superseding indictment, Wells was charged with conspiracy to possess with intent to distribute 50 grams or more of

methamphetamine and with being a felon in possession of a firearm.  Wells was subject to a term of imprisonment up to life on the conspiracy count and to no more than 10 years in prison on the firearms count.  Id. at 3.  Wells was informed the Court was obligated to utilize the advisory Guidelines to calculate the Guidelines' range for Wells's sentence and the Court was not bound by any sentence anyone recommended.  Id.  In exchange, the Government agreed to not object to any recommendation Wells receive up to a three-point reduction based on Wells's acceptance of responsibility, would move to dismiss the remaining counts of the superseding indictment against Wells, and would withdraw all § 851 information filed against Wells.  Id. at 3–4, 11.  Also included in the plea agreement were waiver provisions; Wells agreed to waive his right to appeal, except if the Court sentenced him above the statutory maximum or above the Guidelines' range the Court found or if the Government filed an appeal, and Wells "explicitly and irrevocably" instructed Ms. Fisher not to file an appeal, absent those exceptions.  Id. at 8–9.  Wells also agreed to waive any collateral attack, including a § 2255 motion, except to make ineffective assistance of counsel claims.  Id. at 9.  Wells agreed he was satisfied with Ms. Fisher's advice and her work.  Id. at 10.  Wells affirmed he had read and reviewed the agreement with Ms. Fisher, understood the provisions, voluntarily agreed to the plea agreement, and stipulated to the factual basis.  Id. at 14.  Wells signed the agreement, as did Ms. Fisher.  Id.

At the outset of the Rule 11 hearing, Wells assured Judge Wood no one was making, pushing, or leaning on him to change his plea and pleading guilty was what he wanted to do.  Crim. Case, ECF No. 918, p. 3.  After he was sworn in and Judge Wood gathered biographical information from Wells, Judge Wood advised Wells he did not have to plead guilty and reviewed with him the rights he had if he chose to not plead guilty and to proceed to trial.  Id. at 6.  Specifically, Judge Wood informed Wells he would have: the presumption of innocence;

continued representation by Ms. Fisher; the right to see, hear, confront, and cross-examine any Government witness; the right to see the Government's evidence and to put up his own evidence; and the rights to call witnesses and to testify or to remain silent.  Id. at 6–7.  Judge Wood reminded Wells if he decided to plead guilty and the Court accepted his guilty plea, he would be waiving those rights and sentencing would be all that would remain in his case.  Wells stated he understood and had no questions about the waiver of rights.  Id. at 7.

Wells affirmed he and Ms. Fisher discussed the facts and law applicable to his case. Wells did have some questions for Ms. Fisher, and Judge Wood allowed the two time for discussion.  Id. at 8–9.  Ms. Fisher wanted to clarify on the record the maximum statutory sentence Wells would face on count 1 is life imprisonment, but the actual sentence was informed by the Guidelines, which she had reviewed with Wells.  Id. at 8.  Wells affirmed he and Ms. Fisher had reviewed the superseding indictment, reviewed and discussed the plea agreement, and had discussed the Guidelines in at least general terms.  Wells stated he was satisfied with Ms. Fisher's representation.  Id. at 9.

Judge Wood then reviewed the superseding indictment with Wells, including the counts against him and the two counts to which he was pleading guilty, and noted under the conspiracy count, Wells was involved in a conspiracy involving possession with intent to distribute 50 grams or more of methamphetamine and under the firearm count with being a felon in possession of a firearm.  Id. at 9–11.  Wells stated he understood what was set forth against him in the superseding indictment.  Id. at 12.  Judge Wood then reviewed what the Government would have to prove beyond a reasonable doubt as to the two counts to which he was pleading guilty, and Wells stated he understood and also understood, by pleading guilty, he was admitting the essential elements were satisfied.  Id. at 12–13.  Judge Wood also reviewed the statutory

sentencing provisions with Wells concerning the two counts to which he was pleading guilty, stating she "want[ed] to be really clear with" Wells about sentencing because he had "some questions" about sentencing even before the Rule 11 hearing.  Id. at 13–15.  Wells sought clarification on count 45 and its attendant sentence—making sure this was the 18 U.S.C § 922(g) count—and Judge Wood re-stated the statutory sentence for that count was no more than 10 years in prison.  Id. at 15.

Judge Wood then discussed the roles of the advisory Guidelines and the sentencing factors of 18 U.S.C. § 3553 in sentencing but noted the sentence she would impose had to be within the statutory parameters.  Id. at 16–17.  Wells stated he understood but had a question about his potential as a career offender.  Id. at 17–18.  Based on the information available to AUSA Kirkland and the probation office at the time, neither had reason to believe Wells would qualify as a career offender under the Guidelines.  Ms. Fisher stated she provided information to Wells about his potential sentence both with and without career-offender status.  Id. at 18.  Wells noted no one had promised him an exact sentence, to which Judge Wood responded: "That's good because at this point all they can do is give you their best estimate and their best guess, and their estimate wouldn't be binding on me as your sentencing judge[.]"  Id. at 19.  Wells told Judge Wood Ms. Fisher had his permission to reach a plea agreement with the Government.  Id.

AUSA Kirkland provided a summary of the plea agreement reached, by which Wells agreed to plead guilty to counts 1 and 45 of the superseding indictment and, in return, the Government would move to dismiss the remaining counts against Wells at sentencing.  Id.  In addition, AUSA Kirkland stated the Government would move to dismiss its previously filed § 851 information.  Id. at 20.  Wells and Ms. Fisher stated the AUSA's summary was consistent with the agreement they negotiated, and Wells affirmed he read the agreement before he signed

it.  Id. at 20–21.  Wells also affirmed no one had made any promises to him regarding the outcome of his case, other than the provisions contained in his plea agreement.  Id. at 21.

Judge Wood wanted to ensure Wells understood the appellate-rights waiver provision contained in the agreement, which would allow Wells to file a direct appeal only under three circumstances: (1) if Judge Wood sentenced Wells about the statutory maximum; (2) if Judge Wood sentenced him above the advisory Guidelines' range; and (3) the Government filed an appeal.  Id. at 21–22.  Additionally, Judge Wood noted the plea agreement contained a collateral attack waiver, with the only exception being Wells could collaterally attack his sentence and conviction based on a claim of ineffective assistance of counsel.  Id. at 22.  Wells stated he understood the waiver provisions and had no questions.  Id.

Judge Wood then asked Wells if he still wished to plead guilty to counts 1 and 45 of the superseding indictment because he, in fact, was guilty of those two counts.  Wells responded in the affirmative, as he did to Judge Wood's further inquiry of whether he understood the rights and privileges he was waiving, or giving up, if she accepted his plea.  Id. at 23.  Judge Wood found Wells's offer to plead guilty to counts 1 and 45 of the superseding indictment was knowing and voluntary, and Wells agreed with her.  Id. at 24.

AUSA Kirkland called TFO Sapp to provide a factual basis for the plea.  TFO Sapp stated he was a member of a task force that investigated drug trafficking in Ware County and surrounding counties from August 2016 through August 2017 and this investigation involved wiretaps, surveillance, search warrants, controlled purchases, confidential sources, pole cameras, and interviews of participants.  Id. at 25.  TFO Sapp noted Wells was identified as a distributor of methamphetamine and the FBI conducted two controlled buys with him in Ware County, which totaled approximately 91 grams of methamphetamine.  Id. at 25–26.  TFO Sapp stated

officers executed a search warrant of Wells's residence in Ware County, during which Wells was present and officers recovered the Taurus Millennium Model PT140 .40-caliber firearm described in count 45 of the superseding indictment.  Id. at 26.  Wells did not dispute any of TFO Sapp's testimony and admitted to the truth of his testimony.  Id. at 28.  Judge Wood was satisfied there was a factual basis for Wells's guilty plea and directed the plea be entered.  Judge Wood accepted the plea and adjudged Wells guilty of counts 1 and 45 of the superseding indictment and noted the probation officer would prepare a PSR.  Id.

Based on this record, it is clear Wells's guilty plea was made knowingly and voluntarily. The record shows Wells entered his guilty plea free from coercion, understood the nature of the charges, and understood the consequences of his plea.  Lambert, 777 F. App'x at 339.  Judge Wood informed Wells at the outset of the initial Rule 11 hearing the purpose of the hearing was for him to understand the case pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Wells wanted to do after consultation with his attorney.  Id. at 2–3.  Judge Wood told Wells he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing or the Government could prosecute him for perjury.  Id. at 3.  Judge Wood discussed the specific rights Wells was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Wells he would waive those rights if he pleaded guilty and she accepted his plea.  Id. at 6–7.  Wells stated he had spoken with Ms. Fisher about the facts and law of his case, including the plea agreement, the superseding indictment, and the sentencing Guidelines in general terms.  Id. at 9–10.  Wells verified AUSA Kirkland's summary of the plea agreement was consistent with the plea agreement he had signed.  Id. at 21.  Judge Wood asked Wells whether he wanted to plead guilty because he was, in fact, guilty of counts 1 and 45 of the superseding indictment, and he answered

in the affirmative.  Wells declared he understood the rights and privileges he was waiving by pleading guilty, including appeal and collateral attack waivers, and proceeded to do so.  Judge Wood determined Wells's guilty plea was knowing and voluntary.  Id. at 23–24.  AUSA Kirkland provided a factual basis for Wells's plea, and Wells did not dispute the Government's factual basis.  Id. at 28.  Judge Wood accepted Wells's plea and adjudged him guilty of counts 1 and 45 of the indictment.  Id.  In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing.  Lambert, 777 F. App'x at 339.

Because Wells's guilty plea was knowing and voluntary, his ineffective assistance claims as to the plea process and agreement are without merit.  The record belies any and all assertions Wells makes as to Ms. Fisher's alleged ineffective assistance of counsel during the plea process.  Wells vowed to tell the truth during his Rule 11 proceeding and must live with his assertions in that proceeding.  Thus, the Court should **DENY** these grounds of Wells's § 2255 Motion.

### C.    Assistance During Sentencing

According to Wells, Ms. Fisher was ineffective during the sentencing proceedings because she did not challenge the validity of any of his previous convictions or the use of those convictions at sentencing.[6]  Doc. 1 at 4.  Wells also claims Ms. Fisher did not show him the revised PSR or review the Sentencing Guidelines with him.  Id.  In addition, Wells states Ms. Fisher purposely told the Court he is a gang member.  Wells further states Ms. Fisher told him he would be sentenced to 295 months' imprisonment if he objected to the PSR or otherwise said anything to the Court.  Id.

---

[6]    Wells seems to suggest Ms. Fisher was ineffective by informing Wells he would not be classified as a career offender for sentencing purposes.  To the extent Wells makes that argument, it lacks all merit.  Wells was not classified or sentenced as a career offender, and he knew he likely would not be classified as such during the plea hearing.  Crim. Case, ECF No. 918, pp. 18–19; ECF Nos. 934, 988; Doc. 15 at 17.

In response, the Government asserts Wells stated during the sentencing hearing he and Ms. Fisher read and discussed the PSR and decided to withdraw any objections to it. Doc. 15 at 16. In addition, the Court allowed Ms. Fisher to discuss the PSR further with Wells during a four-hour recess of the sentencing proceedings. The Government notes Wells fails to identify a single provision in the PSR that is incorrect or explain how any correction would result in a different sentence. Id. at 17. Moreover, the Government counters Wells's argument that he was unaware of the Guidelines' range at the sentencing hearing because the Court took Wells's total offense level, criminal history category, and Guidelines' range from the PSR and adopted those findings, and Wells did not express any objection or surprise when the AUSA and Ms. Fisher agreed the bottom of the Guidelines' range was 235 months in prison. Id. The Government notes Wells could not challenge the validity of any of his prior convictions during the sentencing hearing in federal court because Wells was represented during each prior criminal proceeding. Id. at 17–18. The Government states Wells, himself, informed the Court at sentencing he had been a gang member "since [he was] little[]" and does not show how this admission increased his sentence. Id. at 18 (quoting Crim. Case, ECF No. 988, pp. 19–20). Finally, the Government states the Court took a four-hour recess so Wells could discuss the many questions he had about sentencing with Ms. Fisher.

Wells fails to show any deficient performance by Ms. Fisher or any prejudice related to sentencing. At the sentencing hearing, Judge Wood reminded Wells he and Ms. Fisher appeared before the Court for the Rule 11 hearing. Crim. Case, ECF No. 988, p. 4. Judge Wood reminded Wells he pleaded guilty to and was adjudged guilty of count 1 of the superseding indictment, conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine, and to count 45 of the superseding indictment, possession of a firearm by a

convicted felon.  Wells stated he had no objections to the facts and conclusions regarding the

Guidelines application the probation officer made, and Judge Wood adopted those as her own.

Id. at 5.  Judge Wood inquired whether Wells wished to withdraw his guilty plea, as there "have

been some indication[s]" he wished to do so.  Wells verified he no longer wished to withdraw his

appeal.  Id.

Judge Wood determined Wells's total offense level was 33, with a criminal history

category of six, which resulted in a 235- to 239-month Guidelines' range, and she noted the

statutory penalty for count 1 was a minimum of 10 years and a maximum of life in prison and a

maximum of 10 years in prison for count 45.  Id. at 6.  The Government notified the Court it was

withdrawing its § 851 notice per the terms of the plea agreement.  Id. at 9–10.  Ms. Fisher

informed the Court the facility where Wells was housed would not allow her to visit Wells

during the COVID-19 pandemic prior to sentencing.  Id. at 7–8, 10–11.  Judge Wood allowed

Wells and Ms. Fisher to confer for four more hours so they could review the PSR and some of

the evidence again.

After the recess, Ms. Fisher asked Judge Wood for a downward departure from the

Guidelines' range by two levels based on Wells's admissions of being a gang member and to

selling drugs and based on the amount of drugs that were recovered, which departure would

result in a range of 188 to 235 months' imprisonment.  Id. at 12–13.  AUSA Kirkland argued

Judge Wood should not depart downwardly due to Wells's history of violence and the amount of

drugs he sold in a short time.  Id. at 18.  Judge Wood then allowed Wells to address the Court.

Wells stated he needed the extra time with Ms. Fisher (i.e., the extra four hours the Court

provided) so he could fully understand the process and accept responsibility for his actions.  Id.

He admitted to being "in gangs since [he was] little."  Id. at 20.  Judge Wood sentenced Wells to

210 months' imprisonment, which she noted is a sentence below the advisory Guidelines' range but was made based on the 18 U.S.C. § 3553 factors, the nature of the offense, and Wells's history.  Id. at 22; Crim. Case, ECF Nos. 931, 934.

Based on the record before the Court, Wells fails to show Ms. Fisher provided ineffective assistance during the sentencing proceedings, as he fails to show deficient performance or prejudice.  At the Rule 11 hearing, Judge Wood explained to Wells he was not being considered a career offender under the Guidelines.  Crim. Case, ECF No. 918.  Ms. Fisher, therefore, had no need to object to this classification during the sentencing hearing.  Wells's contention Ms. Fisher did not review the PSR and Guidelines with him is belied by the record and, even if she did not review the PSR and Guidelines with him, Wells expressed no surprise or question to the Court's discussion or findings during sentencing.  Ms. Fisher did state Wells was a member of a gang, but Wells made the same admission, noting he had been in a gang from a young age.  Crim. Case, ECF No. 988, p. 20.  Finally, even if Ms. Fisher told Wells he would face a 295-month sentence if he did not plead guilty to counts 1 and 45 of the superseding indictment, he cannot show he was prejudiced by this statement.  Judge Wood verified no one had promised Wells he would receive a particular sentence and she was not bound by any promise, and Ms. Fisher stated she provided Wells with a sentencing range with and without the career offender enhancement (which had already been determined to be inapplicable).  Crim. Case, ECF No. 918.  The Court should **DENY** these grounds of Wells's § 2255 Motion.

### D.    Assistance on Post-Conviction Matters

Wells contends Ms. Fisher failed to file a notice of appeal on his behalf.  Doc. 1 at 4. Additionally, Wells contends Ms. Fisher failed to file any post-conviction motions on his behalf

and told him he could not pursue any post-conviction matters.[7]  Id.  Wells further contends Ms.

Fisher failed to give him the legal documents from his case.  Doc. 3-2 at 6.

The Government states the Court already found Ms. Fisher advised Wells of his appeal

rights and Wells affirmatively told Ms. Fisher he did not want her to pursue an appeal.  Doc. 15

at 19.  The Government observes there is no right to assistance of counsel in post-conviction

proceedings and, in any event, Wells fails to show how Ms. Fisher's purported ineffective

assistance limited his ability to raise post-conviction claims.  Id.

The Court first considers whether Wells sets forth a valid ineffective assistance of

counsel claim against Ms. Fisher for failing to file a notice of appeal on Wells's behalf at his

directive.  "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's]

failure to prove either will be fatal to his claim."  Johnson v. Scott, 68 F.3d 106, 109 (5th Cir.

1995).  Under the Strickland test, the petitioner must initially show counsel's representation fell

below an "objective standard of reasonableness."  Strickland, 466 U.S. at 688. "While it need not

be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys

representing criminal defendants.'"  Jones v. White, 992 F.2d 1548, 1557 (11th Cir. 1993)

(quoting Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir 1991)).  In making such an evaluation,

"the court should recognize that counsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment."  Strickland, 466 U.S. at 690.  The effectiveness or ineffectiveness of counsel must be

---

[7]      On this point, Wells argues Ms. Fisher did not explain to him he waived his ability to pursue
post-conviction challenges as a part of his plea agreement and states he did not waive his right to make
post-conviction challenges.  Doc. 6-1 at 5.  The Court already addressed Wells's arguments regarding Ms.
Fisher's assistance during the plea process.  The Court does not specifically address any other argument
Wells makes relating to post-conviction matters—save Wells's contentions regarding the filing of a direct
appeal—because Wells only provides conclusory statements in this regard and has, in fact, filed this
§ 2255 Motion, which contains numerous arguments, including those related to the plea process and
waivers.

evaluated by consideration of the totality of the circumstances.  Stanley v. Zant, 697 F.2d 955, 962 (11th Cir.1983).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice.  Strickland, 466 U.S. at 691–92.  In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different."  Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Strickland, 466 U .S. at 694.

"Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  "Even assuming that a rational defendant would not have wanted to appeal the case, [where a defendant] expressly communicated to his attorney his desire to appeal . . .[,] Flores-Ortega mandates that the attorney conduct a specific type of consultation, informing his client about the advantages and disadvantages of appealing and making a reasonable effort to determine the client's wishes."  Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

It is well settled an attorney's failure to file a requested notice of appeal is per se ineffective assistance of counsel.  Flores-Ortega, 528 U.S. at 470, 483–86; Gaston v. United States, 237 F. App'x 495, 496 (11th Cir. 2007).  A defendant claiming ineffective assistance on that score need not demonstrate an ability to raise meritorious issues on appeal.  Flores-Ortega, 528 U.S. at 477–78.  Instead, he can prove ineffective assistance by showing a "reasonable

probability" he would have timely appealed had counsel not failed to file an appeal on his behalf. Id. at 484.  Further, even where a defendant has signed a waiver of direct appeal as part of his plea agreement (as Wells did in this case), he has no burden to show the issue he would have raised on appeal falls outside of that waiver.  Gaston, 237 F. App'x at 497; Gomez-Diaz, 433 F.3d at 793.

Here, the record demonstrates Wells expressly told Ms. Fisher not to file an appeal on his behalf.  After Judge Wood sentenced Wells in this case, Wells continued filing motions with this Court, including at least one more motion to have Ms. Fisher removed as counsel.  Crim. Case, ECF No. 940.  As a result, I held a hearing approximately three months after sentencing. Crim. Case, ECF No. 1079.  At that hearing, I briefly recounted the procedural history of the criminal case, including when Wells was indicted, Wells's appearance before Judge Wood for his change of plea hearing, and Judge Wood's sentencing of Wells, and I observed no notice of appeal had been filed.[8]  Id. at 2–3, 5.  I noted I appointed Ms. Fisher to represent Wells about two years prior to that hearing but also noted a number of other attorneys had represented Wells; in addition, I noted I had "conducted a number of attorney inquiry hearings[,]" based on motions, some of which I granted.  Id. at 3.  At the hearing on Wells's motion, I stated the typical way I conduct an attorney-inquiry hearing is to have counsel for the Government leave the courtroom, conduct an ex parte and off-the-record proceeding with only the defendant and his counsel, and then ask the Government's attorney to return to the courtroom.[9]  Id. at 4.  This process was followed for this motion.

---

[8]       Wells later filed a pro se notice of appeal, which the Eleventh Circuit Court of Appeals dismissed as untimely filed.  Crim. Case, ECF Nos. 1018, 1058.

[9]       The entirety of this hearing has been transcribed and is part of the record.  Crim. Case, ECF No. 1079.

I noted the circumstances for the attorney-inquiry hearing were unusual, given that Wells made his request after sentencing and no notice of appeal had been filed.  In response, Ms. Fisher stated she conducted post-trial counseling with Wells and he told her he did not want her to file an appeal.  Id. at 5.  Even though Wells told Ms. Fisher he did not want her to file anything on his behalf, Ms. Fisher told Wells he needed to do something if he did plan on appealing, which he had not done, and she requested transcripts for Wells.  Id.  Ms. Fisher noted she did not want Wells to miss any deadlines or have his rights violated, but since Wells told her he did not want her to do anything else, there was nothing else for her to do.  Id. at 5–6.  Ms. Fisher stated unequivocally she "specifically addressed the issue of appeal with" Wells and offered to file a notice of appeal, and Wells "very clearly stated he [did] not want [her] to file an appeal."  Id. at 6.  Ms. Fisher confirmed she had a post-conviction consultation with Wells, and she had done all she was ethically obligated to do for Wells and on his behalf.  Id. at 10–11.

I asked Wells directly whether he asked Ms. Fisher to file an appeal on his behalf.  Id. at 10–17.  Wells confirmed he had a conversation with Ms. Fisher about his appeal rights.  Wells stated he told Ms. Fisher he wanted a new attorney and indicated he was not "comfortable" with Ms. Fisher filing an appeal on his behalf.  Wells did not say whether he asked Ms. Fisher to file an appeal on his behalf, only that he wanted a new attorney.  Wells's remarks were vague and non-committal, strongly indicating he did not ask Ms. Fisher to file an appeal.  Id. at 13–15.  At no point did Wells state he asked Ms. Fisher to file an appeal.  Id. at 16–18.

Once the Government's attorney was back in the courtroom, I recounted Ms. Fisher's representations that she had provided Wells with all consultation, guidance, and advice post-judgment she was required to provide and taken all post-judgment actions she was required to take and acted in accordance with Wells's wishes, including not pursuing an appeal.  Id. at 22.

27

Ms. Fisher agreed with my summation.  Id. at 22–23.  Wells stated: "I didn't necessarily express the idea that I didn't want to appeal.  I just expressed I didn't feel comfortable with her making an appeal for me because of the constant conflict . . . . I just asked her to . . . withdraw and get me another counsel."  Id. at 24.  I denied Wells' post-judgment motions as moot and made a specific finding Wells "affirmatively told Ms. Fisher that he did not want her to file an appeal on his behalf . . . ."  Id. at 25.

The undisputed evidence of record shows Wells made an informed decision not to take an appeal and thwarts any claim Wells makes counsel was ineffective for failing to file an appeal on his behalf.  See Eubank v. United States, No. CR414-005, 2016 WL 750344, at *1 (S.D. Ga. Feb. 25, 2016), report and recommendation adopted, 2016 WL 1464578 (S.D. Ga. Apr. 13, 2016), certificate of appealability denied, No. 16-11933-F, 2016 WL 6246827 (11th Cir. Oct. 25, 2016) (denying § 2255 motion where movant faulted her lawyer for failing to directly appeal but notice of post-conviction consultation certification memorialized her informed decision not to take an appeal); Eason v. United States, No. CR613-007, 2014 WL 4384652, at *3 (S.D. Ga. Sept. 3, 2014), report and recommendation adopted, 2014 WL 4956680 (S.D. Ga. Oct. 2, 2014) (same); see also Price v. United States, No. CR614-016, 2017 WL 525869, at *4 (S.D. Ga. Feb. 8, 2017), report and recommendation adopted, 2017 WL 1393058 (S.D. Ga. Apr. 11, 2017) (notice of post-conviction consultation certification and attorney's affidavit regarding same rebut § 2255 claim counsel neglected to apprise movant of the advantages and disadvantages of filing direct appeal).  For this reason, the Court should reject Wells's claim Ms. Fisher rendered ineffective assistance by failing to file an appeal on his behalf.  Thus, the Court should **DENY** this portion of Wells's § 2255 Motion.

II.     **Motion to Receive Copy of Evidence and All Legal Documents, Doc. 22**

Wells states Ms. Fisher did not provide him with his file from his criminal proceedings and he needs this file to help with this case.  Doc. 22 at 1.  Wells also states the Government had the benefit of being able to review evidence to support its opposition to Wells's § 2255 Motion. Id. at 2.  Wells also filed a Motion to Compel, seeking to have Ms. Fisher to "surrender the case work file she created" during her representation.  Crim. Case, ECF No. 1040.

The Government responds the Court should deny this Motion for the same reasons it denied Wells's previous requests for documents: the Court already told Wells he should request copies of items on the docket from the Clerk of Court, and if Wells wanted any document unsealed, he had to show a specific need for that document.  In addition, the Government states the Court has already determined Ms. Fisher made ample and exhaustive efforts to provide any documents in her possession (or in possession of law enforcement personnel and members of Wells's family) to Wells.  Doc. 24 at 1.  The Court also confirmed Ms. Fisher would provide any later obtained records to Wells.  Id.

The Court has already denied Wells's requests to receive these documents, as Ms. Fisher has already provided Wells with all of the documents she possessed.  See, e.g., Crim. Case, ECF No. 997.  The Court **DENIES** Wells's latest attempts to have Ms. Fisher or this Court to provide him with any further documents.

III.    **Motion for Documents, Doc. 23**

Wells asks the Clerk of Court for copies of numerous documents.  Doc. 23.  In response, the Government states Wells should directly ask the Clerk of Court for these documents. Doc. 25.

Wells may obtain documents filed in his criminal case and his other proceedings directly from the Clerk of Court.  Wells is not entitled to free copies.  Wells must pre-pay for copies of all requested documents.  The Clerk of Court docketed Wells's filing as a "Motion" seeking relief from the Court, but the filing is—more accurately—a request the Clerk can respond to directly.  Therefore, I **DENY** Wells's "Motion" and **DIRECT** the Clerk to provide Wells with a statement of the costs for these documents and, if Wells pre-pays for those documents, to provide the documents to him.

## IV.    Motion for Status, Doc. 30

Wells notes he has not heard anything from the Court, even though he filed his Response to the Government's Motion to Dismiss.  Doc. 30.  The Court **DENIES as moot** this Motion.  A month after he filed this Motion, Wells filed a request for a copy of his docket sheet, which the Clerk of Court mailed to Wells.  Doc. 32; staff note dated July 13, 2022.  The docket sheet provided Wells with the status of his case, as does this Report.

## V.    Motion for First Step Act Credits, Doc. 31

In this Motion, Wells contends he was convicted of non-violent offenses and the First Step Act should apply to him to receive credits.  Wells asks the Court to inform him how to obtain credits under this Act.  Doc. 31 at 1.

The Court **DENIES as moot** Wells's Motion.  Judge Wood already entered a ruling on this Motion in his criminal proceedings.  Crim. Case, ECF No. 1130.  To the extent this Motion remains pending in this civil action, the Motion is denied for the same reasons Judge Wood already denied Wells's motion.

**VI.     Motion to Place on the Record Body Camera Footage, Doc. 33**

Wells asks to have the original body camera footage, photographs, and incident reports concerning the search and seizure of his residence to be disclosed and placed on the record and docket of this case.  Doc. 33 at 1.  Wells asserts copies of public records prove his allegations against officers and Joseph Butler deprived Wells of the right to cross-examine a witness and kept certain things out of the record, such as the existence of the no-knock warrant for his residence and excessive use of force against Wells.  Id. at 3, 5.  In response, the Government asserts Wells's Motion is nothing more than a re-packaging of his claim that law enforcement officers conducted an illegal search and seizure in his residence, which it has debunked.  Doc. 36 at 1.

The Court **DENIES** this Motion.  Wells attempts to re-package his argument Ms. Fisher was ineffective for failing to raise an argument in a pretrial motion law enforcement officers conducted an illegal search and seizure at his residence because officers did not have a warrant.  See Doc. 1 at 4, 5, 7; Doc. 3-1 at 3–4; Doc. 3-2 at 3–4, 6.  In this Motion, however, Wells states officers executed a no-knock warrant at his residence and attacked him.  Doc. 33.  Wells's attempt to re-characterize his claim fails.  To be sure, TFO Sapp testified at the Rule 11 hearing law enforcement officials executed a search warrant and conducted a search of Wells's residence as a result.  Wells did not dispute this testimony, permitting Judge Wood to accept the factual basis presented at the Rule 11 hearing.  Crim. Case, ECF No. 918.  In addition, one of Wells's previous attorneys moved to suppress the evidence gathered during the search, but Wells's plea agreement resulted in the mooting of the motion.  Crim. Case, ECF Nos. 318, 416, 466, 484, 988.  In short, Wells's desire to have the original footage, photographs, and incident reports placed on

the docket does not provide him any relief, nor does Wells provide any more than conclusory statements in support of this request.

## VII.    Motion for Evidentiary Hearing, Doc. 34

In calculating Wells's Guidelines' range, the United States Probation Officer assigned three additional points for the Glynn County conviction and assigned another two points for Wells being on probation (for the Glynn County conviction) at the time of the alleged conduct he was charged with in the federal case  Doc. 34 at 1.  Wells argues his Glynn County conviction was illegal.  Id. at 4.  Wells asks the Court to conduct an evidentiary hearing related to officer's use of a Glynn County conviction in calculating Wells's Guidelines' range.  While Wells maintains his request for an evidentiary hearing arises from newly discovered evidence, id. at 1, he only points to events occurring in 2017 and 2019.  Doc. 38.

Section 2255 does not require the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "If the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.  However, a district court is not required to hold an evidentiary hearing where the petitioner's allegations are 'affirmatively contradicted by the record, or the claims are patently frivolous.'"  United States v. Yadigarov, 840 F. App'x 487, 490 (11th Cir. 2021) (citation omitted); see also Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) ("A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record.").  Moreover, a movant is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations

unsupported by specifics or contentions that in the face of the record are wholly incredible."

Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v.

United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004).

Wells's request for an evidentiary hearing and the underlying claims lack merit, are

patently frivolous, and are otherwise affirmatively contradicted by the record.  In many

instances, Wells asserts merely conclusory allegations unsupported by specific or contentions

that are wholly incredible in the face of the record.  Therefore, no evidentiary hearing is

necessary.  Consequently, the Court **DENIES** Wells's Motion for an Evidentiary Hearing.

## VIII.   Motion to Have a Rule 48 Master, Doc. 35

In this Motion, Wells seeks to have a hearing in the Superior Court of Glynn County and

to have a Rule 48 master conduct this hearing.  Wells asserts the former Glynn County District

Attorney and GBNET officers were indicted at the state level based on separate incidents and

having a hearing about these officials could impact his § 2255 Motion.  Doc. 35 at 1.

The Court **DENIES** this Motion.  To be sure, Wells makes his Motion under Federal

Rule of Appellate Procedure 48, which allows the Eleventh Circuit Court of Appeals (and the

other courts of appeals) to appoint special masters to conduct hearings, not a district court.

Fed. R. App. P. 48.  Thus, Rule 48 does not apply to these proceedings.  Wells cites to no other

authority that would allow this Court to grant the relief he requests.

## IX.   Motions to Appoint Counsel, Docs. 39, 43

Wells asks the Court to appoint an attorney to represent him in this matter, but he offers

no legal or factual support.  Doc. 39 at 6; Doc. 43.[10]  There is no automatic constitutional right to

---

[10]      In his Motion at Document Number 43, Wells asks for counsel to assist him with a sentencing
issue relating to an amendment to the Sentencing Guidelines.  Doc. 43.  This Motion likely should have
been docketed only in Wells's criminal proceedings.  Nonetheless, it will be addressed and resolved here.
This Motion would be denied in the criminal case for the same reasons, had it been docketed there.

counsel in post-conviction proceedings in a criminal case.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Webb, 565 F.3d 789, 794 (11th Cir. 2009) (citing Barbour v. Haley, 471 F. 3d 1222, 1227 (11th Cir. 2006)); Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir. 1985); see also Barbour v. Haley, 471 F.3d 1222, 1227–32 (11th Cir. 2006) (noting even defendants sentenced to death do not enjoy a constitutional right to post-conviction counsel.). Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel for an indigent litigant seeking relief under §2255, but such requests are discretionary when "due process or the 'interests of justice'" so require.  Hooks, 775 F.2d at 1438; Norris v. Wainwright, 588 F.2d 130, 133 (5th Cir. 1979); see also 28 U.S.C. § 2255(g) & Rule 8 (c) of the Rules of Governing Section 2255 Cases in the United States District Courts (authorizing appointment of counsel under § 3006A).  Appointment of counsel is "a privilege that is justified only by exceptional circumstances[.]"  McCall v. Cook, 495 F. App'x 29, 31 (11th Cir. 2012).

The interests of justice and due process do not require the Court to appoint an attorney to represent Wells at this time.  That is especially true because there is no need for an evidentiary hearing on Wells's Motion.  Wells does not lay out any such circumstances in either his § 2255 Motion or these Motions.  Should it later become apparent in these proceedings an evidentiary hearing is required or the interests of justice or due process so require, then the Court shall appoint counsel for Wells.

## X.    Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Wells leave to appeal *in forma pauperis*.  Though Wells has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is

filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it

to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Wells's Motion, as supplemented, and the Government's Response thereto and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies Wells a Certificate of Appealability, Wells is advised she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Wells's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Wells *in forma pauperis* status on appeal and a Certificate of Appealability.  I **DENY as moot** Wells's Motions for First Step Act Credits and for Court Status and **DENY** all other remaining Motions.  In addition, Wells filed a Motion to Compel in his criminal case, which I also **DENY**.  United States v. Wells, Case No. 5:17-cr-12 (S.D. Ga. June 21, 2021), ECF No. 1040.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of June, 2024.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA